[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff's petition against the defendant Connecticut Bar Examining Committee (Committee) alleges he has completed all the requirements for admission to the Bar, including passing the written examination, but that, after a fact finding hearing on the petitioner's qualifications, the Executive Committee of the respondent advised him that he did not possess present good moral character and the requisite fitness for admission to the bar, and that his application for admission to the July 1987 bar examination had been rejected. Petitioner CT Page 2552 alleges five grounds upon which the Committee was arbitrary, unreasonable, in abuse of its discretion and did not conduct a fair investigation of the facts and he seeks a court judgment admitting him to the Connecticut Bar. The Committee's answer admits the plaintiff graduated the University of Bridgeport Law School; that he was successful on the Bar examination held July 29th and 30th, 1987 but denies that he was recommended for admission to the Connecticut Bar by the respondent; admits that on November 19, 1987 it advised him that he was not eligible for admission without approval by the Fairfield County Standing Committee, and the Committee, of his character; that on December 22, 1987 the Fairfield County Standing Committee examined his character and fitness and recommended his admission to the bar; that on February 19, 1988 the Executive Committee of the Respondent conducted a hearing on the petitioners qualifications; that on May 23, 1988 the Committee advised him that he did not possess present good moral character; denies that it acted arbitrarily, unreasonably, in abuse of its discretion or without a fair investigation and that the petitioner is irreparably harmed and is without an adequate remedy at law.
The facts are that the Petitioner was advised that he had passed the bar examination, and on January 11, 1988 the Fairfield County Committee on Admission to the Bar voted unanimously to approve his admission to the Bar and so notified the Committee. Thereafter he was given a fact finding hearing by the Committee on February 19, 1988 in which the specific area of inquiry was his criminal record and on May 23, 1988 the petitioner was notified that he did not possess present good moral character and the requisite fitness for admission to the Bar. The petitioner does have a criminal record, possession of marijuana on April 4, 1981, attempted burglary April 1, 1978 for which he received youthful offender treatment as well as disorderly conduct and resisting arrest; September 1983 possession of marijuana and a total of five motor vehicle violations. The minutes of the executive committee indicate that one member felt that the petitioner lacked credibility; another member stated that he showed a lack of candor and the last member felt that his record of illegal substance abuse was the basis for the votes against admitting the petitioner to the Bar. The petitioner at the original Committee hearing had testified than that he was at one time convicted of an interfering charge and a charge of possession of marijuana was nolled. Subsequently by letter he notified them he had reversed the dispositions and in fact he was convicted of the marijuana charge.
Section 51-80 entitled "Admission" states that the Superior Court may admit as an attorney persons qualified CT Page 2553 therefore in accordance with the rules established by the judges of that court, who are given the power to establish rules for the admission, qualifications, practice and removal of attorneys. Practice Book Sections 8 through 19 govern the admission of attorneys to the Connecticut Bar. Section 13 thereof charges the State Bar Examining Committee with the duty, power and authority to provide for examination and admission of candidates and to determine their qualifications for pre-law education, legal educations, morals and fitness, and to recommend to the court qualified candidates. Section 16(3) requires the Committee to be satisfied that the applicant is a person of good moral character amongst other qualifications. Section 19 entitled County Committee on Qualifications provides for a standing committee on recommendations for admission in each county, to whom all applications shall be referred, who shall investigate the general fitness of each applicant and report to the Bar of the county whether the applicant has complied with the rules for admission and is a person of good character and should be admitted.
"Proceedings for admission to the bar. . . are in the nature of investigations by the courts or their representatives to determine whether the candidate is qualified to become an officer of the courts. . . When the standing committee submits its report and recommendation to the court the court must determine whether the committee acted after a fair investigation and hearing and whether it exercised its discretion reasonably and without prejudice. . . In addition the court must determine whether the committee conducted its proceedings in a manner which conforms to the requirements of procedural due process. . ." In re Application of Dinan,157 Conn. 67, 71. "In cases in which admission to the bar is to be denied on the basis of character, however, the applicant at some stage of the proceedings, prior to denial must be adequately informed of the nature of the evidence against him and be accorded an adequate opportunity to rebut this evidence." In re Application of Dinan, supra 72. "The ultimate burden of proving good character rests upon the applicant." In re Application of Koenig, 152 Conn. 124, 132. "The reasons advanced by the committee to support its recommendation were without merit and substance." Id 134. "Where as in this case the decision called in question is within the discretion of the Committee the court reviews the committee's decision on the record of the proceedings to determine whether it had abused its discretion. The hearing is not one de novo." In re Application of Warren, supra 273.
An examination of the transcript of the hearing on February 19, 1988 discloses that the committee members went CT Page 2554 into the petitioner's criminal record thoroughly. The first Committee member felt that the petitioner was not credible because of his explanation of the facts involving his criminal prosecutions, a conclusion not borne out by the testimony of the petitioner at the hearing. His explanations were open and explicit except for his reversal of the guilty plea to interfering and the nolle of the marijuana charge on which he was wrong. However he subsequently, after securing the court records of those corrections, which necessitated a court order to open the files for his inspection, unsolicited sent a letter to the committee with the corrected information. This court finds it difficult to draw a conclusion that the petitioner was not credible from the transcript and the rest of the records. The second Committee member was of the opinion that the petitioner displayed a lack of candor and did not appreciate the importance of his testimony. The transcript does not provide a basis for that conclusion, in fact it does show that he was open and candid in his testimony and realized the importance of the proceeding. The third Committee member based his opinion on the three illegal substance abuse convictions which had occurred between 1981 and 1983 the last of which was seven years ago.
When the present petition came on for trial the attorneys for the Committee and the petitioner agreed to have the trial postponed and for the petitioners to have another hearing by the Committee which was held on November 17, 1989. The parties have stipulated that the Committee voted three to two to stand by its original decision, however, no reasons were provided to this court for the decision of the five committee members, and without the reasons the court is unable to rule on their fairness and reasonableness. At this hearing the petitioner was presented by counsel who argued that the only matter he understood was to be considered was the petitioners present drug condition, however the Committee did go into his criminal violations to some degree. However as the court has previously stated, no reasons by the members for their conclusions has been presented and the court cannot consider that hearing in deciding the issues in this case.
"In judging an applicants moral character, examiners typically look for patterns of conduct that may reflect on the individual's honesty, fairness or respect for the rights of others, or for the laws of the state and nation. Additionally, because the evaluation is to be made of the applicant's present moral character, any pattern of immoral behavior must be sufficiently continuous or current to permit a reasonable inference that similar conduct can currently occur or may likely occur in the future. . . . Reformation from past immoral acts can be shown by a subsequent history of good CT Page 2555 behavior . . . Thus in assessing moral character for purposes of bar admission only those factors that have a rational connection with the applicant's present fitness or capacity to practice law can be considered. . . ." In Re Haukebo 352 N.W. 2nd 752, 754 (Minn. 1984). "A fundamental rule in bar admission cases is that evidence of reform or rehabilitation is relevant to determine an applicant's present fitness to practice law. If an applicant's behavior subsequent to the disqualifying misconduct, demonstrates rehabilitation it can overcome the adverse inference of unfitness arising from past misconduct and if persuasive it may support a finding of a present fitness." Application of Jenkins, 467 A.2d 1084, 1091 (N.J. 1983).
See In Re Rowell, 754 P.2d 905 (Or. 1988) where the Supreme Court of Oregon held that an applicant for admission to the State Bar had requisite good moral character notwithstanding criminal history stemming from drug and alcohol abuse where applicant had not used any illegal substance for the last four years, had been in control of his drinking problem for seven years, and was candid with the bar in admitting his past convictions and past behavior and activities. The petitioner was candid with the Committee and listed all of his criminal convictions on his bar application, as well as providing them at the hearing.
"The ultimate test of present moral character, applicable to original admission to the Bar is whether viewing the applicant's character in the period subsequent to his misconduct, he has so convincingly rehabilitated himself that it is proper that he become a member of a profession which must stand free from all suspicion . . . That the absence of good moral character in the past is secondary to the existence of good moral character in the present is a cardinal principle in considering applications for original admission to the Bar. . . ." Application of Allan S, 387 A.2d 271, 275. See Application of GLS, 439 A.2d 1107 (7d 1982) where the applicant convicted of driving the getaway car in a bank robbery and served six years in prison, eleven years earlier was held to be of present good moral character and fitness to take the Bar Examination. In Re Dr. Leo where the applicant who committed two crimes four and one half years earlier and spent one year in correctional facilities was to apply for admission one half later if he continued his present good conduct. See 88 A.L.R.3rd for cases 3, pg 198 holding that a criminal record does not necessarily preclude admission to the bar and that good moral character can be established in spite of a criminal record. Id 7 pg. 206.
To complete a college education, law school and pass the bar examination for any person is a significant accomplishment, and for this young man to have done all of that in spite of his CT Page 2556 youthful record is a even greater achievement. From the record it is apparent that he has been able to turn his life around and to make of himself a model citizen, one who has achieved for himself a profession. For seven years it is apparent that the petitioner has led an exemplary life except for minor motor vehicle violations. The Committee denied his petition because of lack of credibility, lack of candor, and his criminal record however the lack of credibility and candor have not been borne out by the transcript of the hearing and it therefore follows that an abuse of discretion occurred. Some consideration should have been given to his seven years of good conduct and his present proper standards of morals, character and his general fitness to become an attorney. Some weight should have been given to the Fairfield County Standing Committee's recommendation that he had good moral character and should be admitted.
This court on the basis of the subordinate facts and an examination of the transcript and record finds that the Committee could not fairly and reasonably have reached the conclusion that it did. The reasons stated in the executive meeting report, in the light of the subordinate facts do not have sufficient merit or substance to sustain its recommendation.
The appellant is ordered admitted to the Bar of the State of Connecticut.
IRVING LEVINE, STATE TRIAL REFEREE