[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff seeks an order under 7-148h of the General Statutes to enforce a subpoena duces tecum incident to a hearing noticed by the plaintiff under 2b "Public Hearings" of an ordinance entitled the "Stamford Municipal Code of Ethics". On an earlier date, the plaintiff found that probable cause existed that the defendant had violated the code. The defendant has refused to comply with the subpoena which calls for production of specified written documents, audio and video cassettes, compact discs and other items. The defendant's position is based on the assertion that the failure of the notice of hearing to specify that the defendant violated the code in certain ways, on certain dates, at certain times and at certain places violates his rights to procedural due process under the United States Constitution and the Connecticut Constitution. Since no separate analysis under the Connecticut Constitution has been furnished by the defendant, the court declines to undertake such an analysis. State v. Henning, 210 Conn. 78, 98, n. 19 (1989).
The plaintiff urges the court not to reach this issue for a number of reasons set forth in its supplemental brief, but it has cited no explicit authority for this position. On the contrary, the court believes that whether a given procedure employed by an administrative agency comports with the mandates of procedural due process, is an issue that is ripe for determination whenever it is presented at a threshold stage of a proceeding.
The extent to which procedural due process requirements apply to this proceeding depends upon an analysis of the nature and scope of the plaintiff's function. While the functions of municipal boards and commissions are usually either administrative, legislative or quasi judicial in character, McCrann v. Town Planning and Zoning Commission, 161 Conn. 65,67; Neilson v. Zoning Board of Appeals, 152 Conn. 120, 123, for due process purposes it must be determined whether this particular board acts in an investigative or an adjudicative manner. Casella v. Civil Service Commission, 4 Conn. App. 359,370. CT Page 4650
The necessary starting point is the enabling legislation which empowers such a board to "investigate allegations of unethical conduct, corrupt influence, or illegal activities". Section 7-148h. The statute then incorporates the provisions of Section 1-82a, subsections (a) to (e) and confers no power except to find "probable cause" that such an act has been committed. Section 1-82a confers the further power to initiate a hearing to determine whether there has been a violation after a finding of probable cause.
Insofar as it is pertinent to this case, the ordinance breaks down the board's powers and duties into (i) Advisory Opinions (Sec. 13.C.1), and (ii) Investigations (Sec. 13.C.2). The board has no power beyond the power to find a code violation. The defendant argues that because 14.A.3 makes a violation misconduct, which in turn is grounds for demotion or discharge, the full panoply of due process safeguards must apply as this provision affects a property interest which is entitled to protection. Stochower v. Board of Education, 75 S.Ct. 637
(1956).
In this court's view, this case is governed by the principles enunciated by the United States Supreme Court in Hannah v. Larche, 80A S.Ct. 1502 (1960). In Hannah the court held that the function of the United States Commission on Civil Rights was investigative rather than adjudicative and therefore, the traditional, procedural due process protections did not apply to its hearings. The court rejected the notion that possible or even likely public opprobrium causing loss of employment or possible future criminal prosecution rendered the commission's hearings adjudicative. The court stated that even if such collateral consequences were to flow from the commission's investigations, they would not be the result of any affirmative determination made by the commission. Id. at 1515. What the court meant here is that such consequences would have to emanate from a determination made by some other agency.
The court examined several federal agencies and said that although these agencies normally make determinations of a quasi judicial nature, they also frequently conduct purely fact-finding investigations and "any person under investigation will be accorded all traditional judicial safeguards at a subsequent adjudicative proceeding." Id. at 1517.
Just as the court found with respect to the Commission on Civil Rights, this Board "does not make any binding orders or issue `clearance' or licenses having a legal effect. Rather it investigates and reports leaving affirmative action, if there is to be any, to other governmental agencies where there CT Page 4651 must be a trial." Id. at 1620.
An administrative proceeding that is adjudicative in nature, tends to be accusative and disciplinary in orientation. Willapoint Oysters v. Ewing, 174 F.2d 676 (9th Cir.). However, true adjudication requires the agency to "actually make the decision". It cannot be contended that the mere drawing of findings is participation in the actual decision. Id. at 694.
Significantly, C6-140-9 of the Stamford Charter gives any disciplined employee the right to a hearing to which all of the pretermination due process rights would appertain. Such a hearing would constitute action by another governmental agency as was referred to by the Court in Hannah v. Larche, supra at 1520; Reason v. Heslin, 723 F. Sup. 1309 (S.D.Ind.). Parenthetically, it is noted with importance that neither section7-148h nor the ordinance creates any right of appeal. The plaintiff is not required to accord the defendant the procedural due process rights which he seeks to attach to this hearing. For the foregoing reasons the application to enforce the subpoena duces tecum is granted.
MOTTOLESE, J.